22-7114 Matthew Couch Appellant v. Verizon Communications Inc. et al. Mr. Quainton for the Appellant. Mr. Jassy, Appellees, Verizon Communications Inc., Michael Isikoff. Mr. Kelly, Appellee National Public Radio, Inc. Good morning. Mr. Quainton, you may approach and proceed when you're ready. Good morning, Your Honors. May I please look forward? Do we have the pronunciation of your name right? Quainton? Quainton. Perfect. Yes. Just one preliminary note. If I seem to wobble a bit, that's not nerves or not only nerves. I'm recovering from transverse myelitis. And the last oral argument I did, I asked for permission to remain seated, which was granted. I'm trying it standing, so you will probably see me wobble a bit. Don't be concerned about that. You feel the need to sit down, do so at any time. And we're somewhat flexible with timing. So we'll let you make your argument in the way that is most feasible for you. Thank you, Your Honors. I appreciate that. The core issue in this case is what facts does a limited public figure plaintiff need to allege to raise a reasonable inference of actual malice? Now, the court below, as you know from our papers, applied an incorrect or misleading standard and said that the plaintiff needs to show at the pleading stage by clear and convincing evidence that there is actual malice. And there are other statements in the judge's opinion where he talks about allegations, but he repeats that statement, which he made in an earlier case as well. And I think that gets off on the wrong foot. The question is not what plaintiff needs to show, but what plaintiff needs to allege to raise a reasonable inference. And I would suggest that there are three ways of analyzing this question. First is what I'll call denial plus. The second is editorial decision making. And the third is context. So denial plus, what I mean by that is if a public figure, a limited public figure plaintiff denies allegations that are made about his speech, that by itself may not be enough to raise an inference of actual malice. But when that public figure has a public record of statements, when that public figure is best known for his public statements, when he's best known for his tweets, when a reporter analyzing or making assertions about that public figure is not under some sort of a hot news deadline, has plenty of time to look at the statements by the public figure. When indeed the reporter puts in evidence the statements of the public figure, when there's been prior litigation in which those statements, I'm referring to the Aaron Rich litigation, where the tweets of public figure have been thoroughly analyzed. That's the plus that I think takes this case away from other cases that didn't sort of denial cases, for example, a tie in which there's a self-serving denial on the part of individuals accused of bribery, but they know what they did. And they said, we didn't do it. That's different from this case where the denial goes to things that are in the public record. Are they all in a permanent public record? I'm not that familiar with the technology like Periscope. Is that something that goes away? So Periscope, that's a good question. You can get access to Periscope. But I think now Periscope has been, if I'm not mistaken, it's been shut down. But I believe you can you can get access to that. So you did say that he's best known for his tweets and other kind of memorialized versions of statements. Are you is it in the record that he that everything that he said publicly is somehow memorialized? No, there are frequent statements that that it's the comments that he made on social media. So when, for example, Isikoff says, what was Matt Couch saying? The context makes clear he's not talking about what Matt Couch may have been saying in a bar room and in a conversation. It's what specifically were the tweets? And there's no question about that because the because Isikoff himself puts those tweets in issue and says, look at these tweets. And if you look at the tweets, they don't support at all what he says they support. So what is just to you know, what is the level of diligence when faced with a public figure of this character? What is the level of diligence that in your view, the actual malice standard requires? So when there is a public record of actual statements, it's sort of like it's like the Missong case when there are actual statements that are made. And the reporter has had ample time to review those those statements. You can simply compare the statements of the record. But so my question is, does the journalist have to look at every existing statement? That was what I meant by maybe I wasn't clear by what's the level of diligence that's required? So I don't think the journalist has to look at every single one. But when the journalist makes an assertion. About a statement. And the journalist represents that he has reviewed tweets. That don't support that statement. I think you can infer actual malice from that. It's not as though there's some statement of the abstract. There are very specific statements that are attributed to couch that it's a cough. What's at issue with his own tweets? I'd like to move on to the second point, which is editorial decision making. So the second main way in this case that there is an inference of actual malice is through editorial juxtaposition in particular. And the way that works in this case is what is a cough does is he presents one of his witnesses, one of his interviewees. And that person makes allegations about horrible things that happened to him. We're speaking specifically about Mark Muller. And then at the end of the litany of horribles that Mark Muller suffered. Mark Muller says, well, who did this? It was somebody like Matt Couch. And then on cue immediately without skipping a beat. Isikoff cuts to Matt Couch. It's like in the Keats line. Very word is like a bell to told me back to Matt Couch. So here's you're listening to this as a listener. You hear somebody like Matt Couch did all this horrible stuff. And then, boom, Isikoff sends you immediately to Matt Couch. And it's like the case that we cite, which is Stanton versus Metroport, which is the mating habits of suburban teenagers. And that's a case in which there was an allegation that teenagers were promiscuous. And the photograph on the cover of the story was of a young woman. And the inference was clear that this woman was the type of woman who would engage in these promiscuous acts. In fact, that was false. She had nothing to do with that. And the inference of actual malice arose from that editorial juxtaposition. So as to the on this, the Mueller statements, I think part of the response from the other side is sort of take that as a given. That what was being said was that Matt Couch, for most of those things, played a role. And what they say is, but Mueller is the one making those statements. And so the question should be, did Isikoff have obvious subjective reasons to doubt the truth of what Mueller was saying? And so what's your argument on that? What was the obvious reasons to doubt Mueller as essentially the source of those statements? This goes back to the falsity question that there's absolutely nothing in any tweet that Isikoff has mentioned. And he spent years looking at all these tweets. This is not a hot off the press kind of story. He's had years to look at this. Matt Couch has been. But I think the question is, assuming that the only information that Isikoff is relying on is the identified tweets. And then the question is, given what Mueller says in the recorded interview. What is wrong with Isikoff reasonably crediting Mueller's report that Couch was was one of the people involved? Because Mueller is not. Mueller is actually making a comment about the social media. He gets the information. Well, he's making comment partly through witnesses and partly through direct direct looking at them himself. But here he's making a comment for a witness. I take that to be the gist of the question. Not that, you know, that he's relying on on Mueller and what's wrong with that. And I know in your brief, I sort of had a similar question. You talk about, you know, an anonymous witness in reference to Mueller saying that his girlfriend had found and reported or showed to him some tweets. But the witness here is not anonymous. The witness is Mueller. Right. But he's reporting what is in the public record. He's not just saying, you know, there are there's stuff out there generically. He's saying there are tweets that exist in which my head was superimposed on the body of Jeffrey Dahmer. There are tweets that exist that, you know, superimpose me on on Dexter. Those tweets don't exist. So when we come back to the first one, how do you prove a negative sort of denial? Plus, those tweets do not exist. Couch says they don't exist. We don't know whether those tweets exist or not. They're and they're not directly attributed to Couch. You're saying that Couch and Couch's Twitter account, they don't exist. Couch's Twitter account. Again, I'm coming back to the pleading stage. Right. I'm coming back to what we have in our juxtaposition. Right. To just raise an inference that Isikoff knew this was knew these statements were not true. And I think that inference is raised not just by Matt Couch's denial. That's why I come back to this denial. Plus, but by the fact that he has and says he has reviewed extensively the record, he looked at thousands of tweets. He's put dozens of tweets in the record. None of those support. And you also had a third and the third point. So the third point is, is context. And so I think if you look at the overall context in all of the cases, the defamation case, I think context is crucial. And here the context is that Isikoff has a hobby horse. And his hobby horse is that the Russian Secret Service planted a story that Hillary Clinton tried to assassinate Seth Rich. And what purpose of conspiracy land is overarching purpose is to put that theory on a face. And the face that's chosen is Matt Couch, even though he never said anything about that. It doesn't follow from anything he's ever said. It's not reasonably derived from anything he ever said. But it's a convenient face for Isikoff to use to push his story. So when Isikoff says in his NPR interview, for example, that Matt Couch and the Internet Horde were saying what he says were saying, he means their tweets say that Hillary Clinton and Joe Capone were conspiring to kill Seth Rich. That's there. There's no ambiguity there. There's no it's clear from the context. What Isikoff wants to do is present a person behind these tweets. And just one point on that. The only person named in the NPR interview is Matt Couch. And in the conspiracy land podcast, there are anonymous voices that you hear at the very beginning, which people who know these voices know one is Alex Jones, one is Roger Stone, but they're not mentioned by name. Stone is mentioned separately, but Jones is never mentioned. Couch is the one who's really focused on. So I just like I see my time is almost up. Your time has actually expired. Had you reserved any time for rebuttal? We'll give you the two minutes. Thank you. Morning, Mr. Jassy. Good morning, Your Honor. May it please the court. I'd like to start with counsel's third point about the context. This case, the podcast in this case are about conspiracies advanced, discussed and debunked involving the murder of Seth Rich. Just a few blocks from this courthouse. Plaintiff and appellant Matthew Couch relentlessly attacked Seth Rich's brother, openly accusing Aaron Rich of participating in a cover up of his own brother's murder. After undisputedly inserting himself into the controversy and admittedly falsely accusing others of hurtful conspiracies, we're here because Mr. Couch, without any sense of irony, hypocrisy, remorse or humility, cannot handle that someone else challenges his conduct and his conspiracy theories. That's the conduct. That's the context of this case. Here's the problem with counsel's argument. It is coming at this appeal from the wrong direction. Mr. Couch invents implications from the podcast and then asserts that they are false. But even if all of those statements and implications exist, and even if they're false, which we do not concede, that does not mean that Mr. Couch sufficiently alleged actual malice. He did not. With the actual malice inquiry, we're not examining the sufficiency of the allegations of publication or falsity. The actual malice discussion by defendants and the rulings in the district court orders already assume that allegedly defamatory statements and implications were both published and that they were false. The issue is whether Mr. Couch alleged, as this court requires, that for each defamatory statement, there is a factual basis to conclude the defendants made each such statement with knowledge of falsity or reckless disregard for the truth. Mr. Couch tried twice to convince the district court that he made adequate findings, excuse me, adequate factual allegations of actual malice. But the district court correctly concluded that he failed both times. The district court systematically rejected each of Mr. Couch's actual malice arguments for multiple reasons. Nothing, nothing that's been advanced to this court by counsel shows any error in the district court's reasoning on any of these. That failure is conspicuous. It should be the end of the inquiry at the end of the case. It's not defendants duty to disprove actual malice at any stage of the defamation case. It's plaintiff's duty at the pleading stage to adequately allege actual malice. Mr. Couch relies heavily on his own tweets as if they were the full, exclusive universe of available information. But the podcast is not myopically focused on Mr. Couch's tweets. And as counsel conceded at oral argument just a few minutes ago, it is not the full universe of everything that Mr. Couch has said on the Seth Rich conspiracy or the issues at hand. Defendants were not required to exclusively rely on or even read all of Mr. Couch's tweets. And nothing in the podcast or even in the allegations that proposed first amended complaint rests solely on the tweets. Defendants had first-person interviews, including with Joe Capone, Mark Miller, and Prosecutor Deborah Sines, as reflected in the judicially noticeable podcast. The interviews themselves undermine the conclusory allegations of actual malice. In the briefing, Mr. Couch misclosed the podcast. Direct the court to volume one, pages 114 to 116 of the joint appendix. There, it's quite clear and can be heard on the audio version of the podcast, it's Joe Capone, not Mr. Isikoff, that says Couch asserted that Mr. Capone engaged in, quote, secret meetings with, quote, Hillary. It's Mark Miller, not Mr. Isikoff, that said that an unspecified day circulated doctored photographs and that someone like Matt Couch had caused him distress. Those are words that come from Mr. Capone and Mr. Miller. Is it, in your view, I mean, you start from the premise that, you know, we assume that the statements are false and even assuming that the actual malice falls down. Do we not need to somewhat analyze the assertions and whether Mr. Couch's interpretations are, you know, exclude other reasonable interpretations before applying actual malice? Because when you're testing the relevant information that the journalist has, it's going to be in relation to what statement or the plausibility of what the witness is telling the journalist. You kind of need to grapple with what the journalist is saying and what the witness is saying to the journalist. And they're quite divergent descriptions of that in the briefing. I agree, Your Honor. That's why we have these alternative arguments. I don't think that these implications that Mr. Couch are drawing are reasonable. They're not reasonable. And so that's a reason that we can dispose of those particular statements and alleged implications as supporting a defamation claim at all. But when we're just looking at actual malice, which is what the district court focused on, even if those implications existed, even if they were reasonably drawn, which we don't think is the case, we still have to determine whether or not there was a subjective basis and holding in the speaker's mind that they had actual malice at the time of the publication. And there's not support. I see that my time has expired. May I briefly conclude? Let me ask a question or two. Imagine a case like this one, according to you, where there's no direct knowledge or smoking gun evidence of what the speaker knew. Can there ever be facts from which we can reasonably infer malice? Yes. What would that look like? Well, there could be a collection of situations. For example, if there was a denial by the plaintiff, which we don't have here, it's clear from the podcast that Mr. Couch, there were attempts to interview him. He never disputes that. So that would be a starting point if there's a denial. He talks, counsel talks about denial. Plus, there was never even. That's one thing that could lend itself toward a finding of actual malice. Taken into context, other evidence that would show that information was presented to the journalist or whoever the speaker might have been that shows these are what you're saying is false. So, for example. That's the kind of smoking gun or direct evidence. But I'm imagining a scenario where there's not that direct evidence, but we're kind of inferring malice. You think that that's possible? I guess I maybe I was jumping ahead because when I was thinking of a smoking gun, I was thinking of someone who may have actually communicated. And this does happen from time to time. I know this is false. I'm going to say it anyway or something along those lines. What I'm thinking of is a situation like the Hart Hanks versus Connaughton case from the U.S. Supreme Court where evidence was presented or information was presented to the defendant. And the defendant, out of reckless disregard for the truth, basically turned his or her back on that evidence, walked away. That that is another I see what you're saying. That sounds like direct evidence, but I think it's fair. It's fair enough. And it's it's likely not. My question is not likely. I think it's more of a hypothetical than it is describing this case. I think I think it is a hypothetical. And I think that the way the district court broke down actual malice is really telling. And the fact that that's not directly addressed in the briefing is really telling. The district court went through and found multiple bases to discount any evidence or any excuse me, any allegations, deficient allegations. At this stage of litigation, do you think that the case would come out differently if the standard were not actual malice? No, I don't think so, because you've still got the situation. I mean, I think it is actual malice because he's a limited public figure, etc. But you've still got a situation where Mr. Isikoff is asking questions and getting information back. The information he's getting back from Mr. Capone is that Mr. Couch said that there were secret meetings going on. Those are the words of Mr. Capone that who were the secret meetings with Hillary? Again, the words of Mr. Capone. So from the defendant's perspective, even just looking at those particular statements or implications that are at issue, you know, there's others that they're talking about. But even there, why would anybody in that situation in a defendant's situation, Mr. Isikoff's position, think that that was false when you've got a first person, non-anonymous, credible source saying this is what happened to me? This is what I experienced. There's no getting to another question about the any. Are there any obvious reasons? Just on the the witnesses. So your brief argues in some detail about the Capone statement that the cover-up statement was substantially true as to as to Capone. What about the cover-up statement as to Mark Miller? Do you argue or what is your argument that that is substantially true? And that Isikoff had reason to so conclude. Well, we I don't think we necessarily were positing a substantial truth argument at this stage with respect to this. We are with respect to at least one of the statements regarding Mr. That he was engaged in a cover-up that can be found in the record that Mr. But the substantial truth arguments as to Mr. Muller, we are. I think the question is about the statement that Capone and Muller were involved in a cover-up. And the question is, you have a tweet suggesting that that involves Capone, but through an actual malice lens. What is your argument that there was no actual malice in adding Muller to that state? But I don't think there is a statement that says that. First, I think that what we're talking about is whether or not there's a reasonable implication being made that Mr. That Mr. Muller was involved in a cover-up. And. If we're looking at that particular situation, first of all, I don't think there's a verifiable statement of fact there because we're talking about the issues concerning. The entire debate and conspiracy theories surrounding this issue. So there's a lot of discussion about that. With respect to Mr. Muller specifically, though, whether or not they were involved, whether or not Mr. Muller was involved in a cover-up. I don't think that that's necessarily directly implied by the. So just to focus in the. Plaintiff's allegation is that he has been defamed by having been by. Isikoff saying that Couch falsely accused. Others of complicity in a cover-up and in the Conspiracyland podcast, Isikoff says he talks about Couch's apology to Mr. Rich, Aaron Rich. And then he says he made no reference. Those like Muller and Capone, who he had also claimed were part of a supposed coverage cover-up. And so the question is, what is Isikoff's basis for having said that Couch claimed that Muller was part of a cover-up? I maybe I'm thinking of something else, but I don't think that the apology had happened yet by the time the the. The podcast, I think it came out later, but it but in any event, to answer your question. The the entire discussion of Mr. Muller revolves around the concept that he was part of or somehow complicit in the Seth Rich murder. So there's there's no other reason to be talking about it. It's all part of the same discussion about the conspiracy. I think I think my time has expired unless there's any further questions and urge the court to affirm this report's ruling. Thank you. Good morning, your honors. May it please the court. Morning, Mr. Kelly. The district court's ruling as it applies to NPR was correct for many reasons, as we explained in our I want to focus on just the most important. And that's the fact that Mr. Couch has not pleaded any facts that would plausibly indicate actual malice on the part of National Public Radio. Now, as your honors know, NPR's involvement in this whole situation was very attenuated. All NPR did was air an interview program where host Dave Davies interviewed Mr. Isikoff about Mr. Isikoff's podcast and Mr. Couch only identifies one statement in that entire interview, which went more than 30 minutes as potentially defamatory. And that is the only mention of Mr. Couch's name in the entire broadcast. The host Dave Davies never mentions Mr. Couch's name and never asks for follow up or explains actually who that might be. Mr. Couch in his brief composites three theories as to why NPR would have actual malice. None of them would plausibly establish actual malice, even if they were supported by well-pleaded factual allegations, which they are not. The first and the only one that he actually pleaded below was the theory based on a Washington Post article that came out after the beginning of the rollout of the of the podcast that said the Russians actually were not the first to post this Hillary Clinton murder theory online. You argued in your brief that remember we're at the pleading stage that because Mr. Couch can't actually plead that Dave Davies read this Washington Post article. It's not a reasonable inference that. That's that's knowledge that is fair to impute to Mr. Davies that that seems at the pleading stage pretty challenging. I mean, if a major newspaper in the exact market where a journalist, a leading journalist is working, says something and, you know, that's putting aside. The bite of what's of what set or the alleged bite, but in just the position that in analyzing actual malice, it's not at the pleading stage reasonable to think that information published in the newspaper would in that market would not be known by a journalist seems to me. A new step and perhaps unfair. Perhaps, but. I don't think that's the standard. I think the standard is you have to have facts that would plausibly suggest actual malice. And if you're relying on an article, even an article in a publication like The Post that is very well read and in this market, particularly among journalists. I would say there would have to be something more than just the post published this article. I don't know. I mean, to me, the bigger issue with The Post article and the way the plaintiff relies on it is it just says, as you pointed out in your opening remarks, that the Russians weren't the first, but that they were. It confirms that they were involved and kind of doesn't doesn't have the. The truth undermining impact that the plaintiff might ascribe to it, and that seems to me a more. More central issue, but the notion that if it were a major piece of information that undercut what Isikoff was saying about couch. Actual malice relevant leading stage, one might think so. Yeah, potentially. But that's not this case. And you're going to put your finger on one of the big problems with The Post article is evidence of of actual malice in that it doesn't mention Mr. Couch at all. It doesn't say that Russians did not spread the Hillary Clinton murder theory. It just says that they weren't necessarily the first. And it's not relevant to whether or not Mr. Couch accused Joe Capone of meeting with Hillary Clinton or her aides at the White House. It's it's not probative of actual malice about the allegedly defamatory state. It seems like the plaintiff is using it to generally say that Mr. Davies should have had questions about Mr. Isikoff's journalistic integrity and motives in this situation. And he can respond to that on rebuttal. But you you said that Mr. Couch doesn't seek reinstatement of the of the tort claims. The false light, potential emotional distress, tortious interference with business relations. Those were pled against NPR in the amended complaint. And I take your position to be that's the only one we should be reviewing. So I'm not sure that I follow that argument in your briefings in a footnote. Basis for that, the basis for that is that in his opening brief, Mr. Couch did not mention those those claims as against NPR. So it's because he doesn't seek reinstatement, but he they're in them. They are indeed in the proposed First Amendment. First amended complaint. That's that's correct. But our position is that, of course, because he cannot make out actual malice and because his defamation claims fail for a number of reasons as against NPR, he can't make out any of his other claims as well because they are all premised on defamation. And as as this court has said several times, you can't end run the requirements of a defamation claim by leaving it as a negligence claim or something else. Thank you. The other two theories of actual malice that, oh, I'm sorry, my time has expired. I apologize. Thank you. Mr. Quinton, we're giving you two minutes of time for rebuttal. And just before I forget that, I take both sides to be really looking at the amended complaint. And I think you were pretty clear, but I just want to confirm in your brief that, you know, that's that's where the best case is made. If we're looking at this through the lens of the district court's denial of that for the filing of that complaint as futile, you'd rather have us review that and assume that if that stands, the case goes forward. If it doesn't, we don't have to look separately at that. That's correct. And I think the district court clearly incorporates his prior reasoning into his analysis of the first amendment complaint. So since it's de novo review, I think the best approach is look at the first amendment complaint. Look at the allegations. See if they say to claim which relief can be granted. If so, we proceed. If not, we don't. So I don't want to derail your rebuttal, but I did want to just get your position on one of the last things Mr. Kelly said, which was essentially that if the defamation claims fail, all the other claims also fail. Do you disagree with that? I do disagree with that. I disagree with that with respect to intentional interference with economic advantage. I don't think that's a defamation claim. We do conclude at the end of our reply with a reference to Judge Calabrese's decision in the other Fox case in which she suggests that negligent supervision is available, even if defamation fails. But I think the central issues are the actual malice ones. And I just wanted to point your honors to the record site. It's a six forty one where there's a reference to the Mark Muller cover up statement. And that was in episode six. So it's after the alleged retraction. I think that Muller issue highlights a problem with Isikoff because in your honors questioning of me, the thrust was, well, he's just relying on what witnesses are saying. But then he comes up with something that the witness himself never said. No allegation, Muller ever said that there was any allegation that he was being accused of being in a cover up. He just sort of made that up out of hope. But what's the specific pleading in the complaint that Isikoff knew that Muller was not involved in the cover up? The pleading in the complaint is the same one as with all of them, that there's a reasonable inference of actual malice. And the reasonable inference here comes from the fact that elsewhere, the argument is, well, he's just relying on what a witness said here. The witness didn't say this. So there's you can't have that argument. There's no textual basis for it. There's no witness statement basis for it. It just comes out of thin air. And I think we're entitled to discovery on that. If we imagine we're writing an opinion in your favor and we're going to begin a sentence like this, the strongest pleaded fact that offers an objective, non-conclusory basis for the defendant's state of mind is. So. I would point to three, I think, I think the Muller cover up is one, I think the juxtaposition argument is another one, because if you look at the juxtaposition argument, there's a tenuous assertion by by Muller. Muller says, well, somebody like Matt Couch and then I don't want to interrupt. I was going to follow up, please answer to your question. But the question was, what's the strongest pleaded? Fact in a non-conclusory way, and you said the cover up, you have to be much more concrete, bring it way down. So what is what is the strongest pleaded fact that supports defendants knowledge, actual awareness and therefore reckless disregard of contrary information with regard to something that was said? I think the strongest well pleaded fact is in the NPR interview when Isikoff takes a statement that Joe Capone made, where Joe Capone said in his statement, it must have been a thing about Hillary Clinton. And Isikoff twists that, uses the same word must have. But now, all of a sudden, the must have is attributed to Couch. Couch must have, you know, Couch and the Internet horde say, why is Joe Capone going to the White House? He must have been consulting with somebody else, aides to Hillary Clinton. So now that's an assertion by Couch that Isikoff himself had previously elicited from Capone. He's twisting what Capone says, putting it in the mouth of Couch when that's not what the underlying witness himself had said. There was no statement by Isikoff that Couch had said what he's alleged to have said in the Internet, in the NPR interview. And just if I could just. And anything else? That's your best? To me, that is that that's that's the best one, because he clearly puts it. The juxtaposition, I think, is also, as I said, I think that to me that's very strong because I ask about the juxtaposition. Has there been a case where actual malice was the standard and the court said juxtaposition is enough to sustain actual malice? Yes, the standard case in the First Circuit. I thought that that was not I could easily be misremembering, but I thought that that was not a public figure. And so maybe actual malice wasn't the standard there. It was a stock photo of a kind of random teenager. My recollection is it was actual malice. I could be I could be mistaken, I think, in the white versus fraternal order of police. There are there's a reference to a Southern Air case cited in there. And it says, well, here's what would be actual malice. If you if the if the if the reporter had actually put a picture of a South African connection superimposed on a picture of Southern Air, that juxtaposition would create the inference that said that the Southern Air had a connection to South Africa and that would rise to the level of actual malice. So and I think in that opinion, there is other discussion of juxtaposition, editorial juxtaposition. If you think about juxtaposition. So wait, the juxtaposition, though, goes to the nature of the statement, not to whether it's true or false. I mean, if you had tons of information that Southern Air was, in fact, in cahoots with South Africa and you had that juxtaposition, no problem. So the the message itself is not evidence of actual malice or not. Well, I guess the thing about juxtaposition and editorial decisions generally is, by definition, they're conscious decisions. That's what the reporter is doing. He's making a choice. He's thinking about it. This is what I want to convey. I'm putting these words here. I'm putting this image here. I think from that conscious choice, you get to an actual inference that he knows what he's doing and that if it's false, it's deliberately false. So there are no further questions. The court should reverse the judgment of the court below. Thank you. The case is submitted.
judges: Pillard, Walker, Garcia